**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SAMANTHA CASE,** *et al.* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 10 C 7392 |
| ) | |
| v. ) | Magistrate Judge Daniel G. Martin |
| ) | |
| **THE TOWN OF CICERO,** *et al*. ) | |
| ) | |
| Defendants. ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Samantha Case has brought this action against the Town of Cicero, as well as City of Berwyn police officers Cruz, Ingve, Ko, and Garcia, for alleged battery and violations of her rights guaranteed by the Fourth Amendment.  She brings these claims individually and as the guardian of her minor son, Nicholas Santiago, Jr.  Case claims that, while executing a search warrant at the residence of Nicholas Santiago on March 15, 2010, the officers used excessive force in handcuffing her and pushing her to the ground.  Case was pregnant at the time.  She later gave birth prematurely to a child who was diagnosed with cerebral palsy.  Both sides agree that Nicholas Santiago, Jr.'s condition was caused by the premature birth.  They disagree on why Case gave birth prematurely.  Plaintiffs allege that it was the direct result of the alleged excessive force and seek $28,341,851.05 in damages.

Both sides have presented multiple motions in limine to bar evidence at trial.  A court excludes evidence on a motion in limine only if it is clearly inadmissible for any purpose.  *Betts v. City of Chicago, Ill.*, 784 F. Supp.2d 1020, 1023 (N.D. Ill. 2011). Courts

have broad discretion to decide such matters.  *Jenkins v. Chrysler Motors Corp*., 316 F.3d 663, 664 (7th Cir. 2002).  If it is not apparent that a motion should be granted, a ruling should be deferred until trial so that all considerations of foundation, relevance, and potential prejudice can be properly considered.  *Kiswani v. Phoenix Sec. Agency, Inc*., 247 F.R.D. 554, 557 (N.D. Ill. 2008).  Rulings on motions in limine are only preliminary determinations that a court may alter during the course of the trial.  *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006) (citation omitted); *Luce v. United States*, 469 U.S. 38, 41-42 (1984) ("Trial judges may alter prior in limine rulings, within the bounds of sound judicial discretion.") (internal quote and citation omitted).

## I.   **Plaintiffs' Motions**

**A.   Motion No. 1**:  Plaintiffs seek to bar Defendants from offering an apology to the jury for Plaintiffs' injuries.  The motion is **GRANTED** as unopposed.

**B.   Motion No. 2**:  Plaintiffs seek to bar suggestions that Plaintiffs' counsel acted improperly by interviewing witnesses in this suit.  The motion is **GRANTED** as unopposed.

**C.   Motion No. 3**:  Plaintiffs seek to bar under Rule 609 evidence concerning the prior criminal history of any witness at trial.  Federal Rule of Evidence 609 allows a party to impeach a witness's "character for truthfulness" by introducing evidence of certain types of prior convictions.  Under subdivision (a)(2), crimes whose defining elements "required proving – or the witness's admitting – a dishonest act or false statement" must be admitted without considering the potential for undue prejudice.  Fed. R. Evid. 609(a)(2).  Crimes involving robbery or narcotics possession are ordinarily excluded from this category of prior convictions, as they do not involve a showing of false statements or dishonesty.  *See Coles*

*v. City of Chicago*, 2005 WL 1785326, at *1 (N.D. Ill. July 22, 2005) (citing cases).

To be admissible under subdivision (a)(1), a conviction must be punishable by imprisonment for more than one year and, in a civil case, must also be admissible under the standards of Rule 403. Fed. R. Evid. 609(a)(1). Rule 403 allows a court to exclude relevant evidence if its probative value is "substantially outweighed" by unfair prejudice, confusion of the issues, or its potential for misleading a jury. Unlike subdivision (a)(2), convictions under subdivision (a)(1) are not limited to crimes that require a showing of dishonesty. Such convictions are admissible under the assumption "that criminals are more likely to testify untruthfully." *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992).

Nevertheless, a court must determine that a conviction is actually relevant to a witness's credibility before allowing it to be introduced. *See United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir. 1992) ("[T]he purpose of admitting prior arrests or convictions is not to show that the witness is a bad person or a 'non-saint,' but to impeach his credibility."). Drug convictions may, or may not, meet this standard. *See United States v. Galati*, 230 F.3d 254, 262 (7th Cir. 2000). Courts also limit the amount of evidence that can be given concerning convictions. Ordinarily, "the details of the prior conviction should not be exposed to the jury." *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005) (internal quote and citation omitted). The introducing party may only identify the particular felony involved, its date, and the disposition of the prior conviction. *United States v. Barnhart*, 599 F.3d 737, 747 (7th Cir. 2010) (citation omitted).

At the pretrial hearing, the parties discussed a retail theft conviction within the past 10 years against Ronald Santiago, and a conviction against Nicholas Santiago for vehicular

theft. Stealing a car, like all acts of theft, can be used under appropriate circumstances to impeach a witness's truthfulness. *United States v. Evans*, 2010 WL 2104171, at *4 (N.D. Ill. May 25, 2010). No absolute rule exists, however, and not all such acts are automatically admissible. S*ee Barber v. City of Chicago*, 725 F.3d 702, 714-15 (7th Cir. 2013) (noting that a "felony conviction for possession of stolen property (or possession of a stolen motor vehicle) is not a crime of dishonesty per se").

Nicholas Santiago was also convicted for drug possession as a result of the events that transpired in this case. This presents a more difficult issue. Some courts have excluded the introduction of criminal charges in excessive force cases when they arise from the events that form the basis for the § 1983 claim. *See Jackson v. Webb*, 2012 WL 3204608, at *2-3 (N.D. Ind. Aug. 3, 2012). Testimony on a witness's crime that coincided with the plaintiff's allegations runs the risk of tainting the jury's view of the plaintiff and potentially confusing the jury on the relevant issues. *See Neely*, 980 F.2d at 1081 (noting that "evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony").

That said, Santiago is also Plaintiffs' primary eye-witness for the events that took place on March 15, 2010. Defendants argue that they should be able to impeach his truthfulness concerning the identity of the officer, claiming that they are entitled to demonstrate a potential bias against the officers who arrested him. Some courts have found that prior convictions should not be admitted to show bias against police officers, absent more than a generalized claim that the witness will be biased. *See Thompson v. Martin*, 2011 WL 1938169, at *2 (N.D. Ind. May 20, 2011) (citing cases). That caution is

well taken here.  The parties' briefs and discussion at the pretrial conference were not sufficient to find at this stage that Santiago's prior narcotics convention is admissible under Rule 609.  In addition, the parties suggested that other witnesses who have not yet been discussed may also be part of the instant motion.  The Court will reserve a ruling on the issue until the time of trial.

The Court also declines to rule on the merits of the motion because Plaintiffs claim that Defendants should be prevented from introducing Santiago's prior criminal record due to alleged discovery violations.  The details of Plaintiffs' allegations are not fully clear, though the Court noted at the conference that it was disinclined to strike potentially important evidence on this ground.  For these reasons, the Court defers deciding any part of Plaintiffs' motion at this time.

**D.    Motion No. 4**:    Plaintiffs seek to bar evidence that Defendant officers Ingve, Cruz, Garcia, and Ko have received commendations or awards.  The motion is **GRANTED**.

**E.    Motion No. 5**:  Plaintiffs seek to bar evidence or any argument at trial that Samantha Case or any witness used or possessed alcohol or drugs, either before or after the events that form the basis of this suit.  It is undisputed that Case did not use or possess either illegal drugs or alcohol at the time of the arrest.  Defendants argue that evidence of other drug use should not be excluded because it is relevant to the circumstances that the arresting officers faced at the time.  The search warrant that allowed the officers to enter Nicholas Santiago's home involved, at least in part, narcotics.

The Court agrees that evidence of drug or alcohol use discovered after the relevant events in this case should be barred.  Fourth Amendment excessive force claims must be

5

analyzed under the objective reasonableness standard. "This standard requires that a fact finder analyze whether the officer's actions are objectively reasonable in light of the facts and under the circumstances confronting the officer at the time of the incident, without regard to the underlying motive or intent of the officer, *and without the benefit of hindsight*." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011) (emphasis added). The presence of drugs or alcohol after Case's arrest is not relevant to what the Defendant officers knew at the time of the alleged events. *See Sherrod v. Berry*, 856 F.2d 802, 804 (7th Cir. 1988) (stressing that facts learned after the event should not be considered).

However, the Court cannot find at this point that all knowledge the arresting officers had prior to the events that occurred in this case has no possible relevance. Defendants point to a pre-raid report stating that drugs were present at the home of Nicholas Santiago, where the facts of this case unfolded. Citing Seventh Circuit authority, they claim that the officers had reason to believe that anyone in the house where the search warrant was executed posed a heightened risk of danger. *See United States v. Bullock*, 632 F.3d 1004 (7th Cir. 2011) ("Drug crimes are associated with dangerous and violent behavior and warrant a higher degree of precaution."). *Id*. at 1016. However, this issue cannot be determined based on generalities; it must be seen in light of the specific facts that were in place when the officers arrived at the scene. That evidence is not sufficiently clear for the Court to conclude now that pre-event evidence of drug and alcohol use have no relevance to the objective reasonableness standard. The Court reserves a ruling until trial.

**F.    Motion No. 6**: Plaintiffs seek to bar any evidence concerning the financial status of Samantha Case. The motion is **GRANTED** as unopposed.

6

**G.    Motion No. 7**:  Plaintiffs ask to bar all evidence concerning any collateral payment for medical expenses or injuries that allegedly resulted from the acts that form the basis of this suit.  The motion is **GRANTED** as unopposed.

**H.    Motion No. 8**:  Plaintiffs seek to bar any argument at trial that the taxpayers should not have to pay for costs or damages associated with the underlying incident.  The motion is **GRANTED** as unopposed.

**I.    Motion No. 9**:  Plaintiffs seek to bar evidence of the Defendant officers' financial status and/or their ability to pay for any punitive damages that may be assessed against them.  The Court disagrees.  A "defendant who cannot pay a large award of punitive damages can point this out to the jury so that they will not waste their time and that of the bankruptcy courts by awarding an amount that exceeds his ability to pay."  *Kemezy v. Peters*, 79 F.3d 33, 36 (7th Cir. 1996).  Courts routinely allow such testimony.  *See*, *e.g.*, *Betts*, 784 F. Supp.2d at 1028; *Fox-Martin v. County of Cook*, 2010 WL 4136174, at *2 (N.D. Ill. Oct. 18, 2010).  This part of the motion is **DENIED**.

Plaintiffs further argue that if the individual Defendants are allowed to introduce evidence of this nature, Plaintiffs should be allowed to state that the officers will be indemnified for any compensatory damages.  The Court agrees with this reasoning.  "When defendants have chosen to introduce evidence that they are personally responsible for punitive damages, courts in this District generally have permitted plaintiffs to inform the jury defendants were entitled to be indemnified for compensatory damages."  *Delgado v. Mak*, 2008 WL 4367458, at *4 (N.D. Ill. March 31, 2008) (citing cases).  Limiting instructions are also appropriate to advise a jury that a defendant's financial condition can

only be considered in assessing the amount of punitive damages. *Townsend v. Benya*, 287 F. Supp.2d 868, 874 (N.D. Ill. 2003). Plaintiffs' motion is **GRANTED** on this issue.

**J.    Motion No. 10**: Plaintiffs seek to bar testimony concerning the risks and dangers of police work. For the reasons discussed at the pretrial conference, the motion is **GRANTED IN PART**. Defendants will be allowed to introduce some evidence concerning the circumstances surrounding the specific facts of this case, insofar as it is relevant to the standard for Plaintiffs' claims of excessive force. The scope of that evidence will be determined at trial. But Defendants will not be permitted to introduce generalized evidence of the risks associated with police work.

**K.    Motion No. 11**: Plaintiffs ask to bar any statement or suggestion at trial that they have filed this lawsuit for the purpose of financial gain. The motion is **GRANTED** as unopposed.

**L.    Motion No. 12**: Plaintiffs seek to bar a statement that "anyone can file a lawsuit." The motion is **GRANTED** as unopposed.

**M.    Motion No. 13**: Plaintiffs ask to bar any statement that the area where the underlying incident took place is a "high crime" area or an area known for drug or gang activities. The motion is **GRANTED** as unopposed**.**

**N.    Motion No. 14**: Plaintiffs seek to bar the Defendant officers from wearing uniforms or medals at trial. Ordinarily, police officers are permitted to wear uniforms at trial, though medals are potentially prejudicial to the adverse party. *See Tolliver v. Gonzalez*, 2011 WL 5169428, at *1 (N.D. Ill. Oct. 31, 2011); *Sughayyer v. City of Chicago*, 2011 WL 2200366, at *4 (N.D. Ill. June 6, 2011). The officers in this case may wear

standard police uniforms.  As discussed at the pretrial conference, however, they may not appear in bullet-proof vests or other protective gear that may have been worn during the events of this case.  The officers may not wear any medals or awards.  They will be permitted to wear insignia that reflect their rank within the police force.  The motion is **GRANTED** to this extent.

O.    **Motion No. 15**:  Plaintiffs seek to bar Defendants' counsel from personally participating in any courtroom demonstrations.   In the alternative, they ask that any proposed demonstrations be first made to the Court outside the presence of the jury.  The second part of this request is **GRANTED**.  The Court reserves a ruling on the first part until a specific demonstration is proposed.  However, any restrictions placed on the participation of counsel will apply equally to both sides in this case.

P.    **Motion No. 16**:  Plaintiffs seek to bar any reference to the Defendant officers' intent or motive related to the actions alleged in Plaintiffs' complaint.  Defendants' respond is that the officers' intent is relevant to Plaintiffs' claim of battery.  The Court agrees. Plaintiffs claim that the officers committed battery against both Samantha Case and Nicholas Santiago, Jr.   Under Illinois' law, battery must involve an intended or willed touching.  *Bakes v. St. Alexius Med. Center*, 352 Ill.Dec. 902, 955 N.E.2d 78 (Ill.App.Ct. 2011).   As intent is part of Plaintiffs' claim, Defendants will be allowed to introduce evidence concerning the officers' intent to touch Ms. Case.

Plaintiffs concede that battery includes intent.  However, they dispute in their reply that this includes the motivation for the touching.  This presents a difficult issue under Illinois law: does civil battery only require the intent to touch, or does it also require the

intention to cause a harmful or offensive contact?  One Illinois court has found strong support for both arguments.  *Id*. at 909-10 (finding that civil battery includes an intent to cause a harmful or offensive contact).  Federal courts in this District have largely followed *Bakes* in concluding that a defendant must have the intent to cause a harmful contact. *Thompson v. Village of Monee*, 2013 WL 3337801, at *23 (N.D. Ill. July 1, 2013); *Gilfand v. Planey*, 2012 WL 5498031, at *5 (N.D. Ill. Nov. 13, 2012).  *But see Sneed v. Fox*, 2012 WL 4050831, at *3 (N.D. Ill. Sept. 13, 2012).  The Court reserves a ruling on the issue until trial.

The parties' briefs do not discuss how this motion relates to the excessive force claim, though the issue was raised at the pretrial conference.  The officers' intent has no relevance to the objective reasonableness standard that applies to excessive force allegations.  *Common*, 661 F.3d at 943.  Intent is relevant, however, to the issue of punitive damages.  *See Gonzalez v. City of Elgin*, 2010 WL 3306917, at *2 (N.D. Ill.  Aug. 19, 2010).  A jury may only award punitive damages in such actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Bogan v. Stroud*, 958 F.2d 180, 185 (7th Cir. 1992).  This standard necessarily involves the officers' intent.  But as the Court and the parties did not complete their discussion of these issues at the pretrial conference, the Court reserves a ruling on Plaintiffs' motion until trial.

**Q.    Motion No. 17**:  Plaintiffs seek to bar references to the involvement of any witness in this case with gangs, especially the Latin Kings.  They also seek to prevent

references to gang symbols that may have been displayed at the home of Nicholas Santiago when the officers arrived.

The Seventh Circuit has noted the special weight a jury can give to gang-related evidence. *See*, *e.g.*, *United States v. Westbrook*, 125 F.3d 996, 1007 (7th Cir. 1997) ("We are fully cognizant of the powerful nature of such evidence[.]"). Evidence of a witness's affiliation with a gang "is highly prejudicial, especially when the gang evidence is not relevant to a central issue in a case." *Anderson v. City of Chicago*, 2010 WL 4811937, at *1 (N.D. Ill. Nov. 19, 2010). That is the case here. Defendants have not explained why gang symbols have a direct relationship to Plaintiffs' claims. It is true that the Defendant officers may have been on heightened alert; they were members of the police gang unit and may have recognized gang symbols in the home. However, Case herself was not a gang member and was not under investigation. Under these facts, evidence concerning gang symbols runs the risk of substantially outweighing any probative value it might otherwise have. No evidence on this issue will be permitted.

The Court recognizes that the danger of prejudice does not automatically make all gang-related evidence inadmissible. *United States v. Ozuna*, 674 F.3d 677, 681 (7th Cir. 2012). Defendants argue that Nicholas Santiago's affiliation with a gang is relevant because he is the only person who will be able to identify the officers who allegedly pushed Ms. Case. According to Defendants, his gang affiliation creates a bias against the Defendant officers. Defendants also claim that gang evidence is relevant to the officers' state of mind in carrying out the warrant. Evidence is relevant under Rule 401 if it has a tendency to make the existence of any fact of consequence to the determination of the

action more or less probable than it would be without the evidence. Fed. R. Evid. 401. It is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion, or wasted time. Fed. R. Evid. 403.

The Court again finds that evidence concerning Nicholas Santiago's gang membership is potentially too prejudicial to be admissible for these purposes. Defendants' claim that the officers' knowledge that Nicholas Santiago is a gang member is not directly relevant to the officers' alleged use of excessive force against Ms. Case. The parties state in the final pretrial statement that Santiago had already been placed on the floor and told the officers that Ms. Case was pregnant before they allegedly used excessive force against her. Under these facts, the Court declines to find that Santiago's gang membership is relevant to whether the officers' treatment of Ms. Case was objectively reasonable.

The question of Santiago's bias against the defendant officers is a more difficult issue. Gang membership can be admitted to show bias of various sorts. *See Ozuna*, 674 F.3d at 682. This frequently involves bias for or against other gang members, which is not an issue in this case. Here, the issue is Santiago's potential bias against the Defendant officers who arrested him, and who are members of the police force's gang unit.

Some risk of bias on Santiago's part is present under these facts. However, several factors lead the Court to grant Plaintiffs' motion. Santiago is a key eye-witness for Plaintiffs. Moreover, the parties stated at the pretrial conference that he has large gang tattoos on his face. These visible signs of gang memberships could make evidence concerning Santiago's membership in the Latin Kings especially inflammatory. The prejudice that might arise from introducing such evidence runs the risk of substantially

overshadowing the weight that the jury might otherwise give to Santiago's testimony. Given the importance that Santiago has to Plaintiffs, the Court finds that the motion should be **GRANTED**.

**R. Motion No. 18**: Plaintiffs seek to exclude evidence that the Defendant officers were members of the Town of Cicero's gang unit. Defendants claim that such evidence is relevant to the officers' experience and the reasonableness of their search. Evidence related to an officer's assignment to a gang unit can be "appropriate and harmless" under some facts to show experience or qualifications. *Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012). Defendants claim that admitting such evidence would not be prejudicial to Plaintiffs because it is undisputed that Ms. Case is not a gang member and was not engaged in gang activity when the events of this case took place. However, the same reasoning suggests that the officers' gang-unit experience is not directly relevant to the force they used on a pregnant woman who was not involved in gang activities.

The motion is **GRANTED**. As the Court stated at the pretrial conference, it will revisit this issue at trial if the evidence shows a greater need to introduce the officers' experience in the gang unit. The Court also stressed that its ruling does not preclude the introduction of evidence concerning prior contact the Defendant officers may have had with Plaintiffs' witnesses. Rulings on those matters will be made at trial.

**S. Motion No. 19**: Plaintiffs seek to exclude evidence that Samantha Case has a prior association with Nicolas Santiago. Plaintiffs are concerned that Santiago's criminal record and gang involvement could taint the jury's impression of Ms. Case. The Court agrees that no gang-related evidence should be admitted. However, not all of Ms. Case's

relationship with Santiago can be ruled inadmissible. He is the father of Ms. Case's son, Nicholas Santiago, Jr., who allegedly suffered cerebral palsy as a result of the officers' conduct. Defendants are entitled to present evidence concerning Ms. Case's personal relationship with Santiago, absent any reference to membership or affiliation with a gang. The motion is **GRANTED IN PART**.

**T. Motion No. 20**: Plaintiffs ask the Court to bar all references to tattoos that may be visible on Ms. Case or a witness. No reference to gang-related tattoos may be made at all. Plaintiffs stated at the pretrial conference that Ms. Case has "Nick" tattooed on one of her wrists and that it may be visible to the jury. No reference to the tattoo shall be made unless Ms. Case denies her ties to Nicholas Santiago. No tattoo may be used to suggest gang affiliation or loyalty to a gang. *See Washington v. Carpenter*, 2009 WL 4065192, at *5 (C.D. Ill. Nov. 20, 2009) (barring references to tattoos except for impeachment purposes); *see also Bruce v. City of Chicago*, 2011 WL 3471074, at *9 (N.D. Ill. July 29, 2011). The motion is **GRANTED IN PART**

**U. Motion No. 21**: Plaintiffs seek to bar the introduction or reference to a video of the Berwyn, Illinois residence where the events occurred. The motion is **GRANTED** as unopposed.

**V. Motion No. 22**: Plaintiffs seek to bar evidence that Nicholas Santiago, Jr.'s cerebral palsy was caused by anything other than premature birth. The motion is **GRANTED** as unopposed.

**W. Motion No. 23**: Plaintiffs ask to bar any argument that Ms. Case smoked during her pregnancy or that smoking led to the premature birth of Nicholas Santiago, Jr.

Plaintiffs claim that Defendants have not presented any evidence that Ms. Case smoked during the period when she was pregnant. Based on the discussion at the pretrial conference, the Court finds that a ruling on the issue is premature at this stage. The motion is entered and continued for a decision at a later time.

**X. Motion No. 24**: Finally, Plaintiffs seek to bar evidence that Ms. Case had an abusive relationship with Nicholas Santiago. Months after Ms. Case gave birth to her baby prematurely, Ms. Case signed a criminal complaint against Santiago for domestic abuse. Defendants argue that this evidence should be admitted to impeach Santiago's credibility as a witness, especially of Case denies that she has been struck by anyone other than the Defendant officers. Except for matters covered by Rule 609, extrinsic evidence is not admissible to attack or support a witness's "character for truthfulness." Fed. R. Evid. 608(b). A court may allow an inquiry into such matters on cross-examination if it is relevant to a witness's truthfulness. *Id*. Even then, however, the evidence must outweigh any unfair prejudice or confusion that might arise. Fed. R. Evid. 403; *Martin v. Jones*, 2013 WL 3754017, at *3 (N.D. Ill. July 16, 2013).

Defendants do not articulate why the domestic incident they cite would show bias or a propensity to untruthfulness by Santiago. Domestic violence certainly addresses a witness's character, but it does not involve elements of fraud, dishonesty, or bias. Ms. Case stated in her deposition that this was an isolated incident that had never occurred before or since. A serious risk of prejudice against Santiago exists that outweighs that minimal truthfulness value this incident would have. Plaintiffs' motion is **GRANTED**. As discussed at the pretrial conference, this issue may be revisited at trial if the need for

impeachment evidence on the issue arises.

## II.  Defendants' Motions

**A.    Motion No. 1**:  Defendants assert a five-part motion as follows:

**1**.   Defendants first seek to bar evidence of prior bad acts, disciplinary actions, and citizen complaints against the Defendant officers and any unnamed non-party officers. Rule 404(b) prohibits the use of "other crimes, wrongs, or acts . . . to prove the character of the person in order to show action in conformity therewith."  Fed. R. Evid. 404(b).  Such evidence can be admissible, however, to show motive, intent, plan, or opportunity.  *Id*.; *Okai v. Verfuth*, 275 F.3d 606, 610 (7th Cir. 2001).  *Cf. Edwards v. Thomas*, 31 F. Supp.2d 1069, 1074 (N.D. Ill. 1999) (allowing evidence of prior use of excessive force to demonstrate an officer's intent to commit battery).  Plaintiffs agree with this request concerning the introduction of Officer Ko's Complaint Register ("CR").  Their response does not address any other part of Defendants' motion.  The motion is **GRANTED**.

**2**.   Defendants next ask to bar all evidence of misconduct by non-party officers of the Cicero Police Department and of corruption by Town of Cicero officials.  In light of the dismissal of the *Monell* claim against the Town of Cicero, this request is **DENIED** as moot. No evidence on these issues is relevant to the claims in this case and will not be admitted at trial.

**3**.   Defendants seek to bar any evidence or argument that a "code of silence" or a "blue wall" exists among police officers.  Defendants clarified at the pretrial conference that they intended this request to bar generalized claims of such an unwritten code of conduct. Plaintiffs contend that it is relevant to the police officers' potential bias.  The Court agrees

with Defendants that phrases like "code of silence" or "blue wall" are not admissible.  The same bar applies to generalized claims that police officers typically adhere to such standards of behavior.  *Betts*, 784 F. Supp.2d at 1028-29; *Maldonado v. Stinar*, 2010 WL 3075680, at *4 (N.D. Ill. Aug 5, 2010).  The motion is **GRANTED** to this extent.

However, evidence of bias or an agreement to silence concerning the specific officers who were involved in this particular event will be allowed.  Such evidence is frequently found to be admissible.  *Christmas v. City of Chicago*, 691 F. Supp.2d 811, 819 (N.D. Ill. 2010); *Betts*, 784 F. Supp.2d at 1029; *Logwood v. City of Chicago*, 2013 WL 1385559, at *5 (N.D. Ill. April 4, 2013).

**4**.  Defendants also ask to bar evidence or argument on the existence of standards of conduct set by the Cicero Police Department or other General Orders that may exist concerning police policies and procedures.  Plaintiffs claim that such evidence is relevant to the Defendant officers' state of mind.  The Court disagrees.  The Seventh Circuit has explained that the imprecise and flexible nature of the objective reasonableness standard means that, even when they address an officer's job conduct, general police department orders cannot encompass all possible situations with sufficient detail to make them admissible as a guide to conduct.  *Thompson v. City of Chicago*, 472 F.3d 444, 454 (7ᵗʰ Cir. 2006).

Plaintiffs recognize this point, and they rely heavily on *Edwards*, *supra*, to argue that it does not bar the use of general orders here.  This fails to make any meaningful showing of why *Thompson* does not control this issue.  In *Edwards*, the court allowed general orders to be admitted on the ground that they could be relevant to the plaintiff's alleged

claims of a constitutional violation. *Edwards*, 31 F. Supp.2d at 1075. However, *Thompson* categorically concluded that "the violation of police regulations or even a state law is completely immaterial as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 455. General orders may provide a framework within which police officers operate, but they shed "no light on what may or may not be considered 'objectively reasonable' under the Fourth Amendment given the infinite set of disparate circumstances which officers might encounter." *Id*. at 454.

Plaintiffs further argue that the Defendant officers' state of mind is relevant, and that general orders should be admissible to support Plaintiffs' claims for punitive damages. This is also unpersuasive. "While it is theoretically possible that a particular rule or general order could be relevant and probative, we reject plaintiffs' contention that the failure to follow general orders or other departmental rules constitutes evidence of willful and wanton conduct." *Blackwell v. Kalinowski*, 2011 WL 1557542, at *6 n.1 (N.D. Ill. April 25, 2011). Plaintiffs have not presented any specific general order that would refute this reasoning, which closely follows the logic of *Thompson*. Defendants' motion is **GRANTED**.

**5**. As the final part of the first motion, Defendants seek to bifurcate the *Monell* claim against the Town of Cicero from the excessive force and battery claims against the individual officers. The motion is **DENIED** as moot in light of the parties' stipulation to dismiss the *Monell* claim with prejudice.

**B.  Motion No. 2**: Defendants next ask to bar evidence of events that preceded the execution of the search warrant in this case. The parties agreed at the pretrial conference that they would work to address this issue through stipulations. The Court

defers any ruling on this motion to the start of trial.

**C.  Motion No. 3**:  Defendants seek to bar evidence or testimony from Plaintiffs' expert, Dr. Patrick Duff, concerning: (1) the absence of any prior pre-term delivery by Ms. Case; (2) the presence of a subsequent full-term pregnancy; (3) the results of genetic testing and/or fetal abnormality testing; and, (4) bruising that was observed on Nicholas Santiago, Jr.'s feet soon after birth.  Plaintiffs have agreed to the last of these evidentiary issues.  The motion is **DENIED** as to all others.  These issues are best addressed at trial through competing expert witness testimony.

**D.  Motion No. 4**:  Defendants ask to bar Plaintiffs from calling 20 witnesses who were allegedly not disclosed before the final pretrial order was filed on September 6, 2013. Upon further briefing, this issue was limited to two witnesses, Paul Palumbo and Robert Plouzek.  Mr. Plouzek is Plaintiff Samantha Case's father-in-law, and he did not appear for his scheduled deposition.  The parties agreed at the pretrial conference not to call Mr. Plouzek at trial.  The motion is **DENIED** as moot as it concerns this witness.

Mr. Palumbo is Defendants' police-practices expert.  Both sides have identified him as a potential witness.  According to Defendants, his testimony is no longer relevant in light of the dismissal of the *Monell* claim.  Plaintiffs argue that Palumbo's expert report contains additional *non-Monell* material that may be relevant to their case.  The parameters of that evidence have not been clearly identified at this stage.  Thus, the Court reserves a ruling until trial on whether Palumbo's testimony will be relevant.

**E.  Motion No. 5**:  Defendants seek to prevent Plaintiffs from asking the jury if they are willing to award "millions of dollars," or other words to that effect.  The parties stated

19

at the pretrial hearing that this issue may be more properly addressed through appropriate voir dire questions.  The Court agrees and reserves a ruling on this motion until a later time.

**F. Motion No. 6**:  Defendants ask to bar any reference to Plaintiff Samantha Case's financial status.  The motion is **GRANTED** as unopposed.

**G.  Motion No. 7**:  Defendants request that Plaintiffs be barred from asking jurors to "send a message" in assessing damages, or from using other words to that effect. Defendants' motion was presented when the *Monell* claim was still pending against the Town of Cicero.  Plaintiffs would not have been allowed to ask jurors to "send a message" to the municipality by means of punitive damages because municipalities cannot be subject to such claims in § 1983 cases.  *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).  The *Monell* claim has now been dismissed.  As such, Plaintiffs should not be able to suggest at trial that the Town of Cicero should be punished, reprimanded, or warned to remedy its future actions.  The municipality may be liable for any compensatory damages Plaintiffs recover against the officers, but requesting a jury to "send a message" does not apply to compensatory damages.  *See Betts*, 784 F. Supp.2d at 1033 (finding that such statements only go to punitive damages and do not relate to any actual damages a municipality may be required to pay).  The motion is **GRANTED** to this extent.

However, punitive damages can be assessed against individual police officers. Courts do allow plaintiffs to ask juries to "send a message" to deter future misconduct by police officers by assessing punitive damages.  *See id.; Bruce*, 2011 WL 3471074, at *6 ("Plaintiff will be permitted to argue that he is attempting to deter Defendant officers and

other Chicago police officers from future misconduct."); *Payton v. Fike*, 2010 WL 4065601, at *5 (N.D. Ind. Oct. 15, 2010). Defendants' motion is **DENIED** to the extent it seeks to prevent Plaintiffs from asking the jury to deter future misconduct by the Defendant officers or other police officers.

**H. Motion No. 8**: Finally, Defendants seek to bar Plaintiffs' expert Stan Smith from testifying on Nicholas Santiago, Jr.'s "hedonic damages." Smith issued an expert report on February 22, 2013 concerning four areas of damages related to Nicholas. Two of these included his reduction in the value of life and his loss of society stemming from cerebral palsy. Smith estimated the first loss to amount to $7,752,680 over Nicholas' expected lifetime; the second came to $1,824,488. Defendants claim that Smith should not be allowed to testify on these two topics because his expert opinion fails to meet the standard of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).

Under *Daubert*, expert testimony must be both relevant and scientifically reliable. A court applies a three-step analysis to determine if: (1) the witness is qualified as an expert, (2) the expert's methodology is scientifically reliable, and (3) the testimony will assist the trier of fact. *Myers v. Ill. Central R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). Importantly, the party proffering the expert bears the burden to establish its admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Plaintiffs have not met their burden on this issue. The response does not address specific aspects of Smith's report, his qualifications as an expert, or the methodology Smith used to reach his conclusions. Courts are not obligated to reconstruct arguments or to provide research for litigants. *See United States v. McLee*, 436 F.3d 751, 760 (7th Cir.

2006).

Plaintiffs rely on the Seventh Circuit's pre-*Daubert* decision in *Sherrod v. Berry*, 827 F.2d 195, 205-06 (7th Cir. 1987) (stating that Smith's testimony was "invaluable"). However, *Sherrod* was later vacated on other grounds. Plaintiffs also point to *Mercado v. Ahmed*, 974 F.2d 863, 871 (7th Cir. 1992), which concluded that the Seventh Circuit could not state "conclusively that Smith's approach is devoid of any merit." Even if it were clear that Smith's current methodology is the same as that in *Mercado* – which Plaintiffs do not claim – the mere possibility that it might have merit falls far short of meeting *Daubert*'s requirement that it be scientifically valid. As Defendants point out, other courts have rejected Smith's testimony on hedonic damages. *See*, *e.g.*, *Ayers v. Robinson*, 887 F. Supp. 1049 (N.D. Ill. 1995).

Instead of rejecting Smith's proposed testimony entirely, this Court adopts the middle-ground set by District Judge Gottschall under similar circumstances. *See Richman v. Burgeson*, 2008 WL 2567132 (N.D. Ill. June 24, 2008). Judge Gottschall permitted Smith to testify on the general concept of hedonic damages, but restricted him from assigning dollar values. *Richman*, 2008 WL 2567132, at * 5. In this case, Smith may explain what hedonic damages mean and the general factors that are ordinarily considered as part of such damages. No dollar amount may be cited, nor may Smith propose any methodology by which the jury should calculate Nicholas' hedonic damages. This testimony will help the jury carry out its fact-finding function to determine an appropriate measure of damages. Defendants' motion is **GRANTED IN PART**.

All motions [153, 154, 155, 156, 157, 158, 159, 160, 198, 201] are granted, denied,

or continued to trial as stated above.

**ENTERED:**

_____

**DANIEL G. MARTIN**
**United States Magistrate Judge**

Dated: October 16, 2013